# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

WILLIAM PHILLIPS,            )
                                 )
      Petitioner,          )
                                 )
v.                              )     NO. 1:19-cv-00038
                                 )
ARVIL CHAPMAN, Warden,     )     JUDGE CAMPBELL
                                 )
      Respondent.       )

## MEMORANDUM OPINION

Petitioner William Phillips, a state inmate proceeding pro se, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. No. 1), challenging the legality of his October 2014 conviction in the Circuit Court of Giles County, Tennessee. Respondent has filed the record of proceedings in state court (Doc. No. 20)[1] and an Answer to the Petition (Doc. No. 24). Petitioner has filed a brief in reply to Respondent's Answer. (Doc. No. 28.)

This matter is ripe for the Court's review, and the Court has jurisdiction. Respondent does not dispute that the Petition in this case is timely, that this is Petitioner's first Section 2254 petition related to this judgment of conviction, and that the claims of the Petition have been exhausted. (Doc. No. 24 at 1–2.) Having reviewed Petitioner's arguments and the underlying record, the Court finds that an evidentiary hearing is not required. As explained below, Petitioner is not entitled to relief under Section 2254, and his Petition will therefore be denied by Order entered contemporaneously with this Memorandum Opinion.

---

[1] Petitioner asserts in his Reply that Respondent has failed to file transcripts of the state post-conviction proceedings in this case. (Doc. No. 28 at 1–2.) However, it does not appear that any pertinent transcripts are missing from Respondent's filing, and even if that were not the case, the grounds for the disposition of this matter are apparent from a review of court filings that do not require transcription, as explained below.

# I. BACKGROUND

A. <u>Proceedings Related to Petitioner's Plea</u>

While serving a previous sentence on parole, Petitioner was arrested on July 3, 2012 and subsequently indicted on four counts of sale of cocaine over .5 grams, and one count each of sale of cocaine less than .5 grams, possession of over .5 grams of cocaine with intent to sell, possession of drug paraphernalia, and possession of a firearm during the commission of a dangerous felony. (Doc. No. 20-4 at 3–10.) The Giles County Circuit Court appointed counsel, but ultimately allowed counsel to withdraw from the representation due to conflicts with Petitioner. After recessing the April 14, 2014 hearing at which counsel's motion to withdraw was granted, the court briefly resumed the proceeding to discuss with the State the candidates for appointment as Petitioner's new counsel. (Doc. No. 20-8 at 24.) The court summoned the attorney who was determined to be best suited to represent Petitioner (Mr. Pierchoski, who happened to be in the courthouse that day), and the court and counsel then had the following brief exchange:

> THE COURT:  Mr. Pierchoski, Mr. Phillips is still over there in the blue shirt from TDOC. He tells me he [is] serving a 26 year sentence, but he is actually eligible to meet the parole board next month. That doesn't mean he's going to be very successful. And I think the General's [right] that they are not going to grant him release, he's got [a] pending B Felony charge.
>
> So, there is some incentive for him to try this case and it is scheduled in July. But he's got crossways with [former counsel] Mr. Baddour and I realize he's going to get crossways with his next lawyer too, those kind of people do routinely.
>
> MR. PIERCHOSKI:  Your Honor, I will talk [to] him while he's here. . . .
>
> THE COURT:  Let me, since I used the "these people," I better clarify that for the record. It is my experience that when we see a defendant who blames everybody but himself, he's probably going to blame all these lawyers, not just the first one. But maybe Mr. Phillips is an exception and I shouldn't stereotype him with all those other cases like that I've had before.

(Doc. No. 20-4 at 86–87.[2]) Mr. Pierchoski proceeded to discuss with the court the case of a different client, and in so doing referred to what "usually happens with folks like [her]," at which point the court responded, "Be careful about 'those folks'[,] we are both going to get in trouble using it." (*Id.* at 87.)

Six months later, on the morning of what was scheduled to be the first day of Petitioner's trial, he reached an agreement with the State to plead guilty to one count of sale of cocaine, with a sentence of 20 years in prison but release eligibility after service of 35 percent of that sentence. The State dismissed the remaining charges, and Petitioner's guilty plea and agreed sentence were entered by the court that same day, on October 1, 2014. (*Id.* at 53–57.) The judgment form contains the following "Special Condition": "There is no competency issue in relation [to] the plea, but TDOC may want to evaluate the defendant for treatment at special needs." (*Id.* at 56.) Petitioner subsequently confirmed that this recommendation was related to "some trauma [he] suffered in [his] first imprisonment[.]" (Doc. No. 20-7 at 22–23.)

Within 30 days of his conviction and sentencing, Petitioner filed a pro se motion to withdraw his guilty plea (Doc. No. 20-4 at 64–68), arguing that "the negotiated plea was a direct result of coercion placed by the Petitioner's said counsel." (*Id.* at 66.) The State opposed the motion, and a hearing was scheduled for November 13, 2014. At the hearing, Petitioner appeared and testified, explaining his coercion claim as follows: "You know, my lawyer, he went and told my family about [the plea offer]. You know what I'm saying, got my Mama all upset. My Mama can't even travel to come and see me, doctor got her on – my Mama might be dying. And he go tell her something like that and got [Petitioner's mother and two sisters] out there upset. And they

---

[2]     The Court notes that the cover page for this excerpt of the proceedings (Doc. No. 20-4 at 85) mistakenly identifies the date of those proceedings as April 14, 2017, rather than the correct date of April 14, 2014.

telling him to tell me to take the deal[.]" (Doc. No. 20-7 at 9.) Petitioner agreed that his motion was "accusing Mr. Pierchoski of using [his] mother to pressure [him] into a plea" when he would rather have left his family out of it, gone to trial, and risked a much less favorable sentence. (*Id.* at 13–16.)

Mr. Pierchoski also appeared at the plea-withdrawal hearing and, though he had not been granted leave to withdraw from the representation, testified adversely to Petitioner under questioning by the trial judge, Petitioner, and, briefly, the attorney for the State. Regarding the plea negotiation, Mr. Pierchoski testified as follows:

> Mr. Phillips indicated today that he wanted to go to trial, and that is true. We were here October 1st. I was prepared to try the case. I had broken off negotiations about two months before based on his rejection of every plea that was offered. I was here prepared to try that case. I went and informed him that we had about an hour to an hour and a half delay because a Court reporter was not timely ordered and they were on their way. He [inquired] if the last offer was still on the table. . . . My response was, you know, I can find out. We had an hour and a half to kill, I talked to General White, negotiations began. The original offer was there. [Petitioner] instructed me to get something better than that. . . .
>
> After it went back a few times he, [Petitioner], told me – I was somewhat frustrated because I would go to General White, I would get an offer. I would take it back to [Petitioner] and he would reject it, the morning of trial. Finally, he indicated to me that if I could get 20 years at 35 percent, that excluded the gun charge, he would sign it and take it. I sort of begrudgingly went to General White again. She contacted her officer, as a result of that she said okay – that offer was extended. I went back to [Petitioner] in the Grand Jury room. Told him the offer was essentially 20 years at 35 percent. The gun, everything else . . . would be nol[le] prossed. He indicated he'll sign . . . the paperwork. So, we developed the guilty plea that morning. I put together the paperwork, gave it to [Petitioner,] he signed it. We came in and went to the normal State versus Mackie requirements for guilty plea and he didn't impose any objection at the time.

(*Id.* at 38, 41–42.) When asked if he remembered telling Petitioner that his mother wanted him to take the plea deal, Mr. Pierchoski responded, "Judge, I never discussed the deal with his mother[,] [except to say] . . . we are looking into a possible settlement." (*Id.* at 42.)

4

Petitioner accused Mr. Pierchoski of lying under oath, but the court credited Pierchoski's testimony and denied Petitioner's motion to withdraw his plea. (*Id.* at 50–61; Doc. No. 20-4 at 72.) Petitioner did not appeal the denial of his plea-withdrawal motion.

B. <u>Post-Conviction Proceedings</u>

Petitioner timely filed a pro se petition for post-conviction relief and motion to correct an illegal sentence in the trial court. (Doc. No. 20-1 at 4–21.) Counsel was appointed but did not file an amended post-conviction petition. After holding an evidentiary hearing at which Petitioner appeared and testified, as did Mr. Pierchoski and Petitioner's mother and sister (Doc. Nos. 20-2 & 20-3), the court denied post-conviction relief in an order filed on December 15, 2016. (Doc. No. 20-1 at 32–42.) Petitioner appealed this denial to the Tennessee Court of Criminal Appeals (TCCA). (*Id.* at 43–44.)

The TCCA gave the following description of the claims and evidence presented in the post-conviction trial court:

> On August 3, 2015, the Petitioner filed a pro se petition for post-conviction relief, claiming, in pertinent part, that he was entitled to relief because the trial court failed to appoint counsel to represent him for his motion to withdraw his guilty plea; never notified him that he was "going to court" on the motion on November 13, 2014, and could present witnesses to testify on his behalf; and allowed [Pierchoski] to testify against him at the hearing. The Petitioner also claimed that he received the ineffective assistance of counsel because [Pierchoski] coerced him into pleading guilty by using the Petitioner's mother as "bait to lure [the Petitioner] to the guilty-plea table." Finally, the Petitioner claimed that he was entitled to post-conviction relief because the trial court made an "inappropriate comment" to him at the April 14, 2014 hearing on original trial counsel's motion to withdraw. . . .
>
> At the November 23, 2016 evidentiary hearing, the Petitioner called [Pierchoski] as his first witness. [Pierchoski] testified that on the morning of the scheduled trial, the parties had to wait about two hours for a court reporter, so counsel and the State began "renegotiating." The Petitioner agreed to plead guilty to selling cocaine, and the trial court held a guilty plea hearing. Counsel said that he "did not take part" in preparing the motion to withdraw the guilty plea and that "[i]t was filed by [the Petitioner]." Post-conviction counsel asked if [Pierchoski] represented the Petitioner at the hearing on the motion to withdraw the plea, and [Pierchoski]

5

answered, "Well, it's kind of gray. . . . But I guess technically I was still -- could still be considered his -- his attorney but from a practical standpoint, and the merits of the case, I'd say that -- that my representation had terminated at that time." He acknowledged that he ended up testifying as a witness at the hearing on the motion to withdraw the plea and that he would have been unable to act as both a witness and the Petitioner's counsel. No other attorney represented the Petitioner at the hearing, and "[the Petitioner] voiced his concerns himself."

With regard to the Petitioner's mental health, [Pierchoski] testified that a notation was placed in the "special conditions" box on the judgment form, stating that the trial court recommended that the Petitioner "be evaluated or subjected to, or admitted to the DeBerry Special Needs Facility in the Department of Corrections." [Pierchoski] thought the Petitioner's mother and sister requested the evaluation. He said that the Petitioner was "argumentative" and would not listen to counsel but that he never questioned the Petitioner's sanity. Counsel stated that the Petitioner had the ability to understand what was going on with the plea and that the Petitioner "knew and understood what was happening that day because it was the term of years and the percentage that he requested and when he got it, he accepted it."

Mary Ann White, the Petitioner's mother, testified that she and two of her daughters were present for the Petitioner's trial on October 1, 2014, and that she spoke with [Pierchoski]. Counsel told her that he wanted the Petitioner to plead guilty because the Petitioner would "probably spend the rest of his life in prison" if the Petitioner went to trial. Counsel also told her the Petitioner was "out of control and acting crazy." The Petitioner, Ms. White, or Ms. White's daughter told counsel that Ms. White had been sick and had a heart problem, and counsel told Ms. White that he was going to let the Petitioner talk with her. Ms. White and her daughters waited in the hallway outside the courtroom for "a long time," but counsel never brought the Petitioner out to speak with them. Counsel later told her that "they had settled the case." Ms. White said the Petitioner had "mental problems." After the Petitioner pled guilty, Ms. White talked with the trial court and asked that the court get the Petitioner some help for those problems before sending him back to prison. Later that day or the next day, Ms. White spoke with the Petitioner on the telephone, and he told her, "'I did what you wanted me to do. . . . I took the plea.'" Ms. White told the Petitioner, "'I didn't tell you to take that plea bargain.'" The Petitioner responded, "'Well, that ain't what he said.'" The Petitioner was upset and said that "they just lied to me." Ms. White said she did not tell [Pierchoski] to convince the Petitioner to plead guilty.

Trudy Wood, the Petitioner's sister, testified that she was at the courthouse with her mother on October 1, 2014, and that [Pierchoski] "came out to talk with us about the charges he had, and the agreements that they had been offered." Counsel also told them "something about videos." Ms. Wood and her mother told counsel that "whatever it was that [the Petitioner] chose to do, that would be fine with us, that we just wanted him to do what it was that he thought was best for him." They

6

never told the Petitioner that he needed to plead guilty due to his mother's health. Ms. Wood said the Petitioner suffered from depression and mental illness.

*Phillips v. State*, No. M2017-00118-CCA-R3-PC, 2018 WL 4462179, at *2–3 (Tenn. Crim. App. Sept. 17, 2018).

On post-conviction appeal to the TCCA, Petitioner, through appointed counsel, raised the following two issues: (1) "Whether [Petitioner] was prejudiced by the court's perceived use of a derogatory, racially based remark to the [Petitioner], and then the court not recus[ing] itself from further proceedings on this case, thus suggesting the court's bias against the [Petitioner] and his case"; and (2) Whether [Petitioner] was prejudiced by [the] trial court's denial of his *pro se* motion to withdraw his guilty plea (due to coercion), without appointing [Petitioner] an attorney, nor testing the [Petitioner's] mental capacity to waive his right to counsel and knowingly, intelligently, and voluntarily proceed *pro se*." (Doc. No. 20-9 at 5.) Finding that Petitioner had (1) waived any claims regarding judicial bias and recusal by failing to raise them before the trial court, and (2) failed to demonstrate that he was prejudiced by the trial court's missteps at the hearing on Petitioner's motion to withdraw his guilty plea, the TCCA affirmed the decision of the post-conviction trial court. *Phillips*, 2018 WL 4462179, at *5–6.[3] Petitioner's application for permission to appeal to the Tennessee Supreme Court was denied on February 21, 2019. (Doc. No. 20-14.)

After he was denied post-conviction relief in state court, Petitioner filed his pro se Petition under Section 2254 in this Court.

---

[3]     All judges on the TCCA panel agreed that Petitioner had waived his judicial bias and recusal claims. Two of the judges (one in dissent from, and one in concurrence with, the lead opinion's analysis) disagreed on the issue underlying Petitioner's claims of error at his plea-withdrawal hearing, namely, whether a post-sentencing motion to withdraw a guilty plea is a critical stage at which the right to counsel attaches. *See Phillips*, 2018 WL 4462179, at *6–11. Nevertheless, the court decided that Petitioner had failed to demonstrate prejudice from any erroneous deprivation of counsel.

7

## II. CLAIMS OF THE PETITION

The Petition before the Court (Doc. No. 1) asserts the following claims:

(1) Petitioner's sentence as a career offender is unlawful because he was not advised of his right to avoid self-incrimination during plea proceedings on his predicate offenses between 1996 and 2009;

(2) The trial court erred in finding Petitioner competent to tender a plea of guilty without adequately questioning him during his plea colloquy under Tenn. R. Crim. P. 11, resulting in entry of an unknowing, involuntary plea due to Petitioner's mental illness;

(3) The trial court erred in failing to consider Petitioner's entrapment defense;

(4) Petitioner was denied a fair trial because of the trial judge's display of racial bias in violation of Petitioner's Equal Protection rights, or because of the judge's subsequent failure to recuse;

(5) Due to Petitioner's erratic, irrational behavior, the trial court violated his due process rights by failing to "revoke his pro se status" and hold a competency hearing;

(6) Petitioner's 20-year sentence for a non-violent crime constitutes cruel and unusual punishment;

(7) Counsel was ineffective in failing to: (a) investigate his case properly, especially with respect to mitigation evidence; (b) arrange a competency evaluation; (c) prepare Petitioner to testify; (d) seek recusal of the trial judge based on racial bias; and (e) prepare and pursue the defense theory of entrapment.

## III. LEGAL STANDARD

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting Section 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 & n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact;

rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

The standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Petitioner bears the burden of proof. *Pinholster*, 563 U.S. at 181.

Even that demanding review, however, is ordinarily only available to state inmates who have fully exhausted their remedies in the state court system. 28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (petitioner must present the "same claim under the same theory" to the state court). This rule has been interpreted by the Supreme Court as one of total exhaustion, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court.[4] *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim

---

[4]     In Tennessee, the Court of Criminal Appeals is the highest appellate court to which appeal must be taken in order to properly exhaust a claim. *See* Tenn. Sup. Ct. R. 39; *Adams v. Holland*, 330 F.3d 398, 402–03 (6th Cir. 2003).

must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim or state law deems the claim waived),[5] then the claim is technically exhausted, but procedurally barred. *Coleman*, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412,

---

[5]      The Tennessee Post-Conviction Procedure Act provides that "[i]n no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment," and establishes a one-year statute of limitations for filing that one petition. Tenn. Code Ann. § 40-30-102(a) and (c). The Act further provides that "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," unless that ground could not be presented due to unconstitutional state action, or is based on a new and retroactive constitutional right that was not recognized at the time of trial. *Id.* § 40-30-106(g).

12

418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)); *accord Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

## IV. ANALYSIS

Respondent argues that Petitioner procedurally defaulted all claims of the Petition by failing to raise them in state court, particularly in post-conviction appellate proceedings. Indeed, in view of Petitioner's failure to appeal the trial court's denial of his motion to withdraw his guilty

plea and the limited scope of his post-conviction appeal, only claims 4 and 5 of his Petition (which generally track the issues he presented on appeal to the TCCA) are arguably undefaulted. The Court begins by analyzing these arguably undefaulted claims.

A. Claim 4

Petitioner claims that he "was denied a fair trial because the proceeding was tainted by racial bias, an extraneous influence prohibited by . . . Equal Protection under the 1st, 8th and 14th Amendments of the U.S. Constitution and Tennessee Law, or, in the alternative, that he was denied a fair hearing because the judge failed to recuse himself considering his racist beliefs." (Doc. No. 1 at 18.) This claim is based on the trial judge's comment and clarification of intent when he said that Petitioner would "get crossways with his next lawyer too, those kind of people do routinely." (Doc. No. 20-4 at 86–87.)

While Petitioner contends that this claim "is similar to" the first issue raised in his post-conviction appellate brief (Doc. No. 1 at 18), exhaustion of state remedies requires more than similarity. Proper exhaustion requires presentation in the state courts of "the same claim under the same theory" advanced in the federal habeas petition. *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010). "It is not enough that all the facts necessary to support the federal claim were before the state courts, *or that a somewhat similar state-law claim was made*." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (emphasis added; citations omitted).

Petitioner's argument on post-conviction appeal was based entirely on standards applicable to Tennessee judges under Tennessee Supreme Court Rule 10. (*See* Doc. No. 20-9 at 17–19.) He did not explicitly present a claim that the trial judge's failure to recuse violated his rights under the U.S. Constitution or federal law, nor did his brief's single reference to "the fairness of the

14

proceeding" (quoted from commentary to Tenn. S. Ct. R. 10) suffice to alert the TCCA that he was claiming a Fourteenth Amendment violation. *See McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) (finding that federal claim was not fairly presented in state-court appellate brief which failed to cite any federal precedent and only alleged denial of a "fair trial" and "due process"). Accordingly, this claim—whether stated as an Equal Protection violation or a deprivation of a fair hearing—is defaulted. While Petitioner attempts to make a showing of cause excusing the default and asserts that federal review may be had in any event because he is actually innocent, these arguments are without merit, as discussed below.

B. Claim 5

Liberally construed in his favor, Petitioner's fifth claim asserts that the trial court at his plea withdrawal hearing erroneously found him competent to proceed pro se without holding a competency hearing and inquiring into the effects of his mental illness, in violation of his right to due process. (Doc. No. 1 at 23–25.) Respondent argues that this claim concerns trial court error at the original plea hearing, not the plea-withdrawal hearing, and is therefore procedurally defaulted. (Doc. No. 24 at 29–30.) However, as distinct from Claim 2 (concerning erroneous failure to follow state law at the plea colloquy, resulting in entry of a plea that was not knowing or voluntary), a liberal construal of Claim 5's assertion of failure "to revoke [Petitioner's] pro se status" (Doc. No. 1 at 23) indicates its concern with error at the plea-withdrawal hearing, even though it also references error "in not sua sponte ordering a competency hearing before [the] guilty plea hearing." (*Id.* at 24.)

The second claim presented in counsel's post-conviction appellate brief is a close approximation of Claim 5 but does not seek relief under a theory that the trial court's error violated Petitioner's due process rights. Instead, the claim presented to the TCCA is grounded in the Sixth

15

Amendment right to counsel and its inverse, the right to self-representation upon a knowing, intelligent, and voluntary waiver of the right to counsel. (Doc. No. 20-9 at 21–23.) The TCCA prefaced its analysis of this claim by reciting that "Petitioner contends that he was prejudiced by the trial court's failure to appoint counsel to represent him on the motion to withdraw his guilty plea or obtain a valid waiver of his right to counsel before allowing him to proceed pro se at the hearing," and then analyzed the claim under the *Strickland v. Washington* rubric for evaluating claims of denial of the Sixth Amendment right to effective assistance of counsel. *See Phillips*, 2018 WL 4462179, at *5–6. But Petitioner's claim before this Court is a due process claim. (*See* Doc. No. 1 at 23 (arguing that "there comes a point where the defendant's behavior displays such marked indicia of incompetence that the trial court violates due process by not sua sponte suspending proceedings and conducting a hearing into defendant's competency," and citing, *e.g.*, *Drope v. Missouri*, 420 U.S. 162 (1975), a case concerned with the petitioner's "due process right to a fair trial," *id.* at 172, 183).) It thus cannot be said that Petitioner presented the state court with "the same claim under the same theory" he advances in the Petition before this Court. *Hicks*, 377 F.3d at 552. Accordingly, the claim is defaulted.

Even were Claim 5 not defaulted, Petitioner would not be entitled to habeas relief. The trial court explicitly noted on its judgment form that Petitioner's "competency . . . in relation [to] the plea" was not in doubt, even if he were later deemed eligible for treatment at a special needs facility. (Doc. No. 20-4 at 56.) On post-conviction review, the court found that, at the time of the October 1, 2014 plea, Petitioner "understood that he was facing a possible sentence of more than 30 years at 60%," "was in charge of trial day plea negotiations," "knew what he was doing [and] knew the consequences," and "was satisfied with the settlement result that he and counsel had obtained." (Doc. No. 20-1 at 40–41.) The record does not reveal that these factual findings were

objectively unreasonable, nor does it support Petitioner's claim that his behavior at the November 13, 2014 plea-withdrawal hearing was erratic or irrational. But even if Petitioner had been unable to competently represent himself at the plea-withdrawal hearing, the TCCA found that any trial court error in failing to appoint counsel for that hearing was harmless:

> Turning to the instant case, the Petitioner contends that he was prejudiced by the trial court's failure to appoint counsel for his motion to withdraw his guilty plea or to evaluate his mentality at the hearing on the motion before allowing him to proceed pro se. However, the post-conviction court afforded the Petitioner a full and fair hearing on whether he entered his guilty plea knowingly and voluntarily. He was represented by counsel at the [post-conviction] hearing, called witnesses to testify on his behalf, and cross-examined the State's witness. The post-conviction court found that the Petitioner's guilty pleas were knowing and voluntary and that [Mr. Pierchoski] did not coerce him into pleading guilty. In other words, the Petitioner failed to show that the trial court would have granted his motion to withdraw his guilty plea [if he had been represented by counsel at the plea withdrawal hearing]. Accordingly, he has failed to demonstrate prejudice, and the post-conviction court properly denied his petition for post-conviction relief.

*Phillips*, 2018 WL 4462179, at *6. Although this decision is perhaps fairly accused by the dissent of "fail[ing] to address the issue squarely before the court, which is whether the Petitioner was entitled to counsel during his post-sentencing motion to withdraw his guilty plea," *id.*, it does not appear that the decision was contrary to, or based on an unreasonable application of, Supreme Court precedent,[6] nor did it involve "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). Petitioner is not entitled to relief on Claim 5.

---

[6] *See Prance v. Sec'y, Dep't of Corr.*, No. 8:15-CV-681-T-23AAS, 2018 WL 8798755, at *5 (M.D. Fla. Sept. 28, 2018) (noting that "the Supreme Court has not held that a plea withdrawal hearing is a critical stage to which the right to counsel attaches"); *Gilbert v. Hudson*, No. 1:08 CV 1867, 2009 WL 3246978, at *16 (N.D. Ohio Oct. 5, 2009) (finding that "[p]ost-sentence motions to withdraw guilty pleas are not critical stages" as "there is no absolute [federal] 'right' to withdraw a guilty or *nolo contendere* plea even before sentencing," rendering it "unthinkable that a Sixth Amendment right to effective assistance of counsel would exist for a post-sentence motion as a 'critical stage' of the criminal p[ro]section") (citing, *e.g.*, Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.").

17

C. Remaining Claims

1. Procedural Default

Claims 1 (regarding Petitioner's sentence as a career offender), 2 (trial court error in taking his plea without determining his mental capacity to plead knowingly and voluntarily), 3 (trial court error in failing to consider his entrapment defense), 6 (excessive sentence), and 7 (ineffective assistance of trial counsel) were clearly defaulted during post-conviction proceedings, where Petitioner did not raise any claims at the trial or appellate level related to his sentence or the defenses he might have claimed had he gone to trial, nor did he appeal any claim of trial-court error in the initial plea and sentencing hearing or any claims to Mr. Pierchoski's ineffectiveness. Further state-court review is now barred by the post-conviction statute of limitations and restrictions on successive state petitions. Tenn. Code Ann. §§ 40-30-102(a), (c) and -117; *see also* Tenn. R. App. P. 36(a).

Citing *Martinez v. Ryan*, 566 U.S. 1 (2012), Petitioner asserts that cause for all of his procedural defaults may be found in the ineffective failure of his post-conviction counsel to raise his claims in the post-conviction trial court or pursue them on post-conviction appeal. (*See* Doc. No. 1 at 6, 15–16, 21–23, 28–30, 32; Doc. No. 28.) He also asserts that his claims should be adjudicated because there is evidence that he is actually innocent of the crime to which he pled guilty. However, the ineffectiveness of post-conviction counsel cannot provide cause to excuse the default of any claim other than an ineffective-assistance-of-trial-counsel claim. *Martinez*, 566 U.S. at 15 ("[A]n attorney's negligence in a postconviction proceeding does not establish cause . . . except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at

18

trial"). And to establish the actual-innocence exception to the bar of unexcused procedural default, a petitioner is required to demonstrate "new reliable evidence" of his innocence, in order to show that his is the extraordinary case where a fundamental miscarriage of justice would result if the defaulted claim were left unreviewed. *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)); *see also Hodges*, 727 F.3d at 530 (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)). Petitioner submits that "Attachment 2 letters, articles and motions" contain such evidence of his innocence. (*See* Doc. No. 1 at 17, 21, 23, 27, 30.) However, "Attachment 2" to the Petition contains no evidence at all, new or otherwise, but only previous court filings and decisions. (*See* Doc. Nos. 1-2 through 1-6.) Nor is Petitioner's actual-innocence claim supported by the mere assertion that he "never actually intended to sell or deliver drugs on the date the offenses occurred [but] [i]nstead . . . was induced." (Doc. No. 1 at 14.) He has thus failed to show that the bar of procedural default should be excused or bypassed.

Accordingly, Petitioner's failure to present in state court his sentencing claims (Claims 1 and 6) and his claims of trial court error in taking his plea (Claim 2), failing to consider the entrapment issue (Claim 3), and failing to recuse (Claim 4) bars this Court's consideration of those claims. *Hodges v. Colson*, 727 F.3d 517, 529–30 (6th Cir. 2013) ("The petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims and actual prejudice to his defense at trial or on appeal.") (citing *Coleman*, 501 U.S. at 750). As further discussed below, only the default of claim 7 could be excused under *Martinez—if* Petitioner shows that his failure to exhaust his claims of Mr. Pierchoski's ineffectiveness was the result of post-conviction counsel's ineffective failure to raise them in the post-conviction trial court. (*See* Doc. No. 28 at 2–3.)

19

2. Cause Under *Martinez*

The Supreme Court has "explained clearly that 'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. Attorney error is attributable to a habeas petitioner, and thus may not serve as cause for a procedural default, if the error is made at a stage of the proceedings when there is no right to counsel under the Sixth Amendment. *Id.* at 754. The Supreme Court held in *Coleman* that, because there is no constitutional right to counsel in state post-conviction proceedings, any attorney error at that stage that leads to the waiver of claims in state court "cannot constitute cause to excuse the default in federal habeas." *Id.* at 752, 757.

However, in *Martinez*, the Supreme Court modified "the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default . . . by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. This exception stems from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim" of trial counsel's ineffectiveness, when that claim could not have been raised on direct appeal because of state procedural rules. *Id.* at 13. In *Trevino v. Thaler*, 569 U.S. 413 (2013), the Supreme Court extended the applicability of the *Martinez* exception to states with procedural frameworks that do not preclude an ineffective-assistance claim on direct appeal, but make it unlikely that the opportunity to raise that claim at that time will be a meaningful one. *Id.* at 429. The Sixth Circuit held in *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir.

2014), that under Tennessee's procedural scheme, the initial post-conviction proceeding is the first meaningful opportunity to raise a claim of ineffective assistance of trial counsel. *Id.* at 795–96.

Thus, for each defaulted claim of ineffective assistance at trial, Petitioner may overcome the default under *Martinez* if he can show that the default resulted from his initial post-conviction counsel's ineffectiveness under *Strickland v. Washington*, 466 U.S. 668 (1984),[7] and that the underlying claim of trial counsel's ineffectiveness is a "substantial one, which is to say that . . . the claim has some merit." *Martinez*, 566 U.S. at 13–14. The Sixth Circuit has provided the following framework to evaluate claims under *Martinez*:

> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective, . . . and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of *Martinez*, *Sutton*, and *Trevino*. Questions (1) and (2) determine whether there is cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits. . . . [E]ven "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez*, 132 S. Ct. at 1320.

*Atkins v. Holloway*, 792 F.3d 654, 660 (6th Cir. 2015) (some internal citations omitted).

Whether post-conviction counsel was constitutionally ineffective is necessarily connected to the strength of the claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial'

---

[7] All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland*, which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. 466 U.S. at 687. Because the Sixth Amendment right to counsel extends to the plea-bargaining process, the *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

21

enough to satisfy the 'actual prejudice' prong of *Coleman*." *Thorne v. Hollway*, No. 3:14-cv-0695, 2014 WL 4411680, at \*23 (M.D. Tenn. Sept. 8, 2014), *aff'd sub nom. Thorne v. Lester*, 641 F. App'x 541 (6th Cir. 2016).

Each of Petitioner's ineffective-assistance claims is insubstantial, and thus fails to overcome default under *Martinez*, for the same reason: no failure of pretrial advocacy ultimately prejudiced Petitioner, who himself instigated the reopening of plea negotiations on the morning of trial, bargained his way to the best deal he could reasonably have hoped for, and accepted a favorable sentence in exchange for pleading guilty to only one of eight counts of indictment. "[T]o show prejudice in the guilty-plea context, a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" *Hodges*, 727 F.3d at 537 (quoting *Hill*, 474 U.S. at 59). As the post-conviction trial court found, despite Petitioner's allegation of coercion, "the only credible evidence is that it was [Petitioner] that originated the terms of the settlement and convinced everyone else to agree," that it was his "idea to reopen negotiations on October 1 and that he suggested the first counteroffer, then refused it, and then suggested the final offer upon which an agreement was reached." (Doc. No. 20-1 at 38.) Accordingly, as the state court reasonably found, Mr. Pierchoski's performance, strategy, and tactics in the buildup to trial "became immaterial when [Petitioner] re-opened plea[] discussions and settled." (*Id.* at 39–40.) As in *Hodges*, "reasonable inferences from the facts and circumstances" of this case do not support the notion that Petitioner would not have pled guilty but for Mr. Pierchoski's deficient performance in failing to adequately prepare a defense. *Hodges*, 727 F.3d at 539. Rather, it is clear that any ineffectiveness "was [not] 'substantial' enough to satisfy the 'actual prejudice' prong of *Coleman*." *Thorne*, 2014 WL 4411680, at \*23.

22

In sum, consideration of the merits of Petitioner's habeas claims is barred by their unexcused procedural default. This action will therefore be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Petition will be **DENIED** and this action will be **DISMISSED** with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a Section 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. A petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations and internal quotation marks omitted). "[A] COA does not require a showing that the appeal will succeed," but courts should not issue a COA as a matter of course. *Id.* at 337.

Because reasonable jurists could not debate whether Petitioner's claims should have been resolved differently or are deserving of encouragement to proceed further, the Court will **DENY** a COA. Petitioner may seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate Order is filed herewith.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE